IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA MARIE IREY,<br><br>         Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>         Defendant. | CIVIL ACTION<br>NO. 13-7423 |

<u>OPINION</u>

**Slomsky, J.**                                                                                                       January 27, 2016

## I.   INTRODUCTION

Before the Court are the Objections of Plaintiff Angela Marie Irey to the Report and Recommendation of Chief United States Magistrate Judge Linda K. Caracappa. (Doc. No. 16.) Irey filed a Complaint against Defendant Carolyn W. Colvin, Commissioner of Social Security (the "Commissioner"), alleging that the Commissioner wrongfully denied Irey disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. No. 3.) The Court referred this matter to Magistrate Judge Caracappa for a Report and Recommendation. (Doc. No. 13.)  On July 30, 2015, Magistrate Judge Caracappa filed a Report and Recommendation (the "Report") that Irey's request for review be denied. (Doc. No. 15.) On August 13, 2015, Irey filed Objections to the Report. (Doc. No. 16.) On August 24, 2015, the Commissioner filed a Response to Irey's Objections. (Doc. No. 18.)

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a <u>de novo</u> review of the portions of the Report to which objection has been made. After independently reviewing the Administrative Record and for reasons that follow, the Court finds that Irey's Objections lack merit and will adopt and approve in its entirety the Report.

## II.   BACKGROUND

### A. Factual and Procedural History

Plaintiff Angela Marie Irey is fifty-three years old and has a high school education. (Administrative Record ("R.") at 23.)  She is 5' 6" and weighs 242 pounds, with a body mass index of 39.1.  (R. at 16.)  She previously worked as an assembler, an office cleaner, a school cook, and a sandwich maker.  (R. at 288.)  Irey has a history of depressive symptoms that are exacerbated by financial and relationship stressors, and she has treated these symptoms conservatively with outpatient treatment and medication.  (R. at 17.)  She is obese and has constant pain in her left upper extremity; these impairments limit her ability to lift, reach, complete tasks, and use her hands.  (R. at 18.)  She has treated her impairments with prescribed medication, pain relieving injections, and physical therapy.  (R. at 18-19.)  Her impairments interfere with her sleep and force her to nap during the day.  (R. at 18.)

On March 31, 2009, Irey filed for DIB.  (R. at 37.)  In the application, Irey alleged that her disability began on September 27, 2006.  (Id.)  On July 8, 2009, the Commissioner denied Irey's application.  (R. at 107-110.)  Irey then filed a written request for a hearing before an Administrative Law Judge ("ALJ").  (R. at 111-12.)

On August 17, 2010, ALJ Drew A. Swank held a hearing.  (R. at 72-100.)  Irey, who was represented by counsel, appeared at the hearing and testified.  An impartial vocational expert ("VE") also testified.  (Id.)  On October 12, 2010, the ALJ concluded that Irey was not disabled within the meaning of the Act.  (R. at 34-55.)  Irey filed a request for review, and on September 19, 2011, the Appeals Council remanded Irey's DIB claim to ALJ Swank.  (R. at 104-05.)  On February 22, 2012, ALJ Swank held a second hearing.  (R. at 56-71.)  On March 16, 2012, he issued a second opinion, again finding Irey was not under a disability as defined by the Act.  (R.

at 11-33.)  Irey again filed a request for review, and on November 1, 2013, the Appeals Council denied her request.  (R. at 1-6.)

On December 23, 2013, Irey appealed the denial to this Court by filing the Complaint. (Doc. No. 3.)  As noted previously, the Court referred the matter to Magistrate Judge Caracappa for a Report and Recommendation.  (Doc. No. 13.)  On July 30, 2015, Magistrate Judge Caracappa recommended that Irey's request for review be denied.  (Doc. No. 15.)  On August 13, 2015, Irey filed timely Objections to Magistrate Judge Caracappa's Report and Recommendation.  (Doc. No. 16.)  On August 24, 2015, the Commissioner filed a Response in Opposition to Irey's Objections.  (Doc. No. 18.)  The Objections are now ripe for review and a decision.

### B.  Relevant Social Security Administration Regulations

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) (citing Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000)); Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). The Court must also determine whether the ALJ applied the proper legal standards in evaluating a claim of disability. McHerrin v. Astrue, No. CIV. A. 09-2035, 2010 WL 3516433, at *2 (E.D. Pa. Aug. 31, 2010) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984)).

### C. The ALJ's Decision

At the hearing held on February 22, 2012, the ALJ heard testimony from Irey and VE Andrew Beale. The ALJ considered medical opinions of treating physicians William Schaaf, M.D., William Taddonio, M.D., and Gerald Williams, M.D., and state agency examiner Maria Gumbinas, M.D., as well as various other medical records and evaluations. After reviewing the evidence in the Record and proceeding through the five-step evaluation process, the ALJ concluded that Irey was not disabled. (R. at 24.)

First, at Step One, the ALJ determined that Irey had not engaged in any substantial gainful activity since the alleged onset date. (R. at 16.) At Step Two, the ALJ determined that Irey suffered from the following severe impairments: obesity, degenerative disc disease, osteoarthritis, tendonitis, chronic neuropathic pain, and possible reflex sympathetic dystrophy. (Id.) At Step Three, the ALJ reviewed the evidence and determined that none of Irey's impairments, alone or in combination, met or equaled the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 17.)

At Step Four, the ALJ concluded that Irey had the residual functional capacity to perform light work that is limited to jobs without crawling, concentrated exposure to vibrations or hazards, or climbing of ladders, ropes, or scaffolding. (R. at 18.) The ALJ further determined that Irey was limited to jobs with only occasional reaching and handling with the upper extremity. (Id.)

Finally, at Step Five, the ALJ examined whether jobs that Irey could perform existed in significant numbers in the national economy. (R. at 22.) He considered the opinion of the VE, who testified that Irey could perform occupations such as ticket taker and counter clerk. (R. at 66-70.) Ultimately, based on Irey's age, education, work experience, and residual functional capacity, the ALJ concluded that she could not perform any past relevant work, but she could make a successful adjustment to other work that existed in substantial numbers in the national economy. (R. at 22-23.) Thus, she was not considered to be disabled within the meaning of the Act.

## III. DISCUSSION

Irey has made five Objections to the Report. (Doc. No. 18). Although the Objections are identical to the claims asserted in Irey's Complaint, they are nonetheless entitled to de novo

review by this Court. Brown v. Astrue, 649 F.3d 193 (3d Cir. 2011). She objects to the following findings of the Magistrate Judge: (1) the ALJ properly evaluated the opinion of Irey's treating physician; (2) the ALJ did not err in finding Irey's mental health impairments not to be severe; (3) the ALJ did not err at Step Three by concluding that Irey did not meet Listing 1.02(B); (4) the ALJ did not err in evaluating Irey's credibility; and (5) the ALJ adequately considered Irey's obesity. (Doc. No. 16 at 1.) The Court will discuss each Objection seriatim.[1]

### A. The Magistrate Judge Properly Concluded that the ALJ Did Not Err by Giving the Treating Physician's Opinion Little Weight

First, Irey argues that substantial evidence did not support the ALJ's decision to afford Irey's treating physician's opinion little weight.[2] Irey argues that, contrary to the Magistrate

---

[1] In her Response to Irey's Objections, the Commissioner states:

> Because the issues set forth in Plaintiff's objections have already been fully presented and addressed by both parties in their written submissions, for purposes of replying to Plaintiff's objections, the Commissioner relies upon the reasoning set forth in the ALJ's decision, the arguments expressed in the Commissioner's Response to Plaintiff's Request for Review, and the reasoning contained the Magistrate Judge's Report and Recommendation.

(Doc. No. 18 at 2.)

[2] Irey quotes SSR 96-2p, which states in relevant part:

> A finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," *not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and § 416.927.* In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

(Doc. No. 16 at 2-3) (emphasis added by Irey). The ALJ did not reject the testimony of Dr. Schaaf; instead, he afforded it little weight. (R. at 22.)

6

Judge's findings, Irey's treatment history and the opinions of her other treating physicians support the opinion of Dr. William Schaaf. Moreover, she contends that the Magistrate Judge "incorrectly tried to justify the ALJ's reliance" on the opinion of state agency examiner Dr. Maria Gumbinas. (Doc. No. 16 at 4.) Therefore, according to Irey, the ALJ failed to provide legitimate reasons for granting little weight to the opinion of Irey's treating physician.

Dr. Schaaf opined that Irey should never reach, finger, feel, or push/pull with her left hand. He further opined that she should never balance, stoop, kneel, crouch, crawl, or lift or carry weight. (R. at 1363-68.) He also concluded that Irey can sit for 15-20 minute intervals and stand for 30 minute intervals, and should rest for two hours per eight-hour workday. (Id.) Irey cites MRI results from 2007 and 2009 that show tendonitis and osteoarthritis, and argues that the Magistrate Judge failed to note that Dr. Schaaf's opinion is consistent with the opinions of Drs. Williams and Taddonio, Irey's other treating physicians. (Doc. No. 16 at 3.) She cites treatment notes by Dr. Williams noting that Irey should not work after surgery and that she will have permanent limitations in her left shoulder. (Id. (citing R. at 1371, 1497-98).) Dr. Taddonio treated Irey at Berks Family Care, and opined that Irey cannot lift weight, sit, stand, or walk during an 8-hour workday. (R. at 1501-1503.) He also opined that she could not use her arms to grasp or reach, reach above shoulder level, climb, or carry. (Id.) Finally, Irey objects to the Magistrate's reliance on the opinion of Dr. Gumbinas because Dr. Gumbinas is a non-treating, non-examining source. (Doc. No. 16 at 4.)

Generally, an ALJ must give great weight to a claimant's treating physician; however, an ALJ may discredit the treating physician's opinion if contradictory evidence appears in the record. See 20 C.F.R §§ 404.15227(c); Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). While a treating physician relies on his or her own personal records of a plaintiff's impairments,

the record before the ALJ contains additional information that creates a more complete and accurate presentation of a plaintiff's impairments. The opinion of state agency physicians "merit significant consideration." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Therefore, the ALJ is not bound by the opinion of any one physician, and can reject an opinion if there is a lack of support or a finding of contradictory evidence in the record. See id. at 361.

In this case, the ALJ thoroughly examined the medical opinions in the Record. Irey notes that the opinion of Dr. Schaaf was consistent with the opinions of Drs. Williams and Taddonio; however, the ALJ afforded all three opinions little weight because, based on the entirety of the Record, they were "not consistent with the longitudinal objective findings, the conservative treatment records, and Ms. Irey's documented ongoing capabilities." (R. at 22.) Furthermore, the ALJ noted that the opinion of Dr. Taddonio was itself internally inconsistent. (Id.) In providing support for his decision, the ALJ accorded "great weight" to the opinion of Maria Gumbinas, M.D., who found that Irey was limited to light work with postural, manipulative, and environmental restrictions. (R. at 22.)

The weight accorded to Dr. Schaaf's opinion was based on a comprehensive assessment of all relevant medical evidence in the Record. Upon review of that evidence, the ALJ found that the opinion of Schaaf conflicted with other medical evidence before him. For this reason, the ALJ did not accord his opinion the same weight as other, more consistent, medical opinions in the Record. Thus, the ALJ's conclusion is supported by substantial evidence and Irey's third Objection is without merit.

### B. The Magistrate Judge Properly Concluded that the ALJ Did Not Err by Finding Irey's Mental Impairments Not Severe

Irey's second Objection concerns Step Two of the analysis outlined above. At Step Two, the ALJ will find that a claimant is not disabled unless she shows that she has a "severe

impairment." A severe impairment is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520. Irey argues that the ALJ should have followed the "slight abnormality" standard under the Social Security regulations to assess the severity of Irey's mental impairments, and that the medical evidence supported a finding that her mental impairments affected her ability to work. (Doc. No. 16 at 6.) Thus, Irey contends that the ALJ did not properly evaluate her mental impairments.

Under the relevant Social Security regulations, a claimant need only demonstrate something beyond a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work" in order to show that she has a severe impairment at Step Two. SSR 85-28, 1985 WL 56856, at 3. Any doubt by an ALJ as to whether this showing has been made should be resolved in favor of the claimant. Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3d Cir. 2003). However, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (internal citations omitted).

In this case, the Magistrate Judge concluded that the ALJ provided substantial evidence to support the Step Two conclusion that Irey's depression and anxiety did not create significant limitations on her ability to perform work related activities. (Doc. No. 15 at 17.) The Magistrate Judge recounted the various findings of the ALJ that supported his conclusion regarding Irey's mental impairments. (Doc. No. 15 at 17.) The findings were based on records from Berks Family Care between 2009 and 2011 assessing Irey with depression and anxiety, conservative treatment of her symptoms with outpatient treatment and medication, lack of evidence of mental

9

health hospitalization or suicidal ideation, and recent records noting normal mood and affect. (R. at 1372-78, 1480-91.) Based on the evidence before him, the ALJ concluded that Irey's mental health limitations on her daily living were no more than mild. (R. at 17.)

Irey restates her previous argument that the medical evidence demonstrates her mental impairments are severe enough to affect her ability to work, citing medical records and prescriptions that the ALJ and Magistrate Judge considered in their analyses. Irey also states, "regardless of whether the ALJ considered Ms. Irey's mental health impairments to be severe or non-severe, he was required to consider its [sic] effects on her ability to perform work." (Doc. No. 16 at 6.) As the Magistrate Judge correctly noted in the Report, the analysis at Step Two is independent of the analysis at later steps. Thus, a finding that impairments are not severe at Step Two does not preclude assessment of their effect on the claimant's ability at later steps. At Step Four, the ALJ considered the impact of both Irey's severe and non-severe impairments on her RFC. Ultimately, substantial evidence based on medical records and testimony supported the ALJ's decision that Irey's mental health impairments were not severe. As such, Irey's second Objection will be overruled.

### C. The Magistrate Judge Properly Concluded that the ALJ Did Not Err at Step Three in the Disability Analysis

If a claimant successfully demonstrates that she has a severe impairment, the ALJ determines at Step Three "whether the impairment is on a list of impairments presumed severe enough by the [Social Security Administration] to render one disabled; if so, the claimant qualifies" for DIB. Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004) (internal citations omitted). Irey argues in her third Objection that the Magistrate Judge was incorrect in agreeing with the ALJ at this step because the Record "contains extensive treatment notes highlighting Ms. Irey's upper extremity limitations." (Doc. No. 16 at 7.) Therefore, the ALJ should have

concluded that Irey had major joint dysfunction as defined in Listing 1.02(B) of 20 C.F.R. § 404. Irey cites medical evidence in the Record to show that substantial evidence does not support the ALJ's finding, arguing instead that the evidence shows that Irey meets the requirements for a major joint dysfunction disability at Step Three.

> Listing 1.02(B) defines major joint dysfunction as:
>
> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. § 404, Subpt. P, App. 1. In order to meet the requirements for major joint dysfunction, there must be involvement of "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively," or involvement of "one major peripheral joint in *each upper extremity* (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively." 20 C.F.R. § 404, Subpt. P, App. 1 (emphasis added).

Here, like in her previous filings, Irey only cites evidence of left dominant arm and shoulder pain. Although she avers that the Magistrate Judge erred by stating that Irey does not have involvement of both upper extremities—claiming that "the medical evidence of record contains extensive treatment notes highlighting Ms. Irey's upper extremity limitations"—she fails to cite any evidence of involvement in *both* upper extremities. For this reason, the ALJ did not err in concluding that Irey's impairments do not meet the requirements for major joint dysfunction, and Irey's third Objection is meritless.

### D. The Magistrate Judge Properly Concluded that the ALJ Did Not Err in Evaluating Irey's Credibility

Irey next argues that the Magistrate Judge was incorrect to conclude that the ALJ adequately supported his decision regarding Irey's credibility. The Magistrate Judge determined that the ALJ properly evaluated Irey's complaints in deciding that they were not entirely credible. Irey contends that the Magistrate Judge erred in this regard because "in the entire decision the ALJ did not cite even a single piece of evidence that would support a conclusion that Ms. Irey can stand, walk and lift at the light exertional level." (Doc. No. 16 at 9.)

An ALJ is permitted to evaluate a claimant's credibility. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). In doing so, he may consider the internal consistency of a claimant's own statements, the medical evidence, a claimant's medical treatment history, and findings by a state agency or other program physician. 20 C.F.R. § 1529. An ALJ must consider a claimant's statements regarding pain but is not required to give them credit. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). Additionally, an ALJ may disregard a claimant's subjective testimony when conflicting evidence exists in the record. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993). Deference must be given to the ALJ's credibility determination so long as the ALJ discusses the issue and the ALJ's finding is supported by substantial evidence. Alvarez v. Sec'y of Health and Human Sevs., 549 F. Supp. 897, 899-900 (E.D. Pa. 1982).

Here, both the ALJ and the Magistrate Judge provided a thorough summary of Irey's medical records. The ALJ explained that Irey's complaints were not supported by longitudinal objective findings, Irey's treatment records, and Irey's stated capabilities. (Doc. No. 15 at 21.) He noted that Irey retained the ability to care for herself, albeit at a slower pace. (Id.) He also cited medical examinations showing no tearing of Irey's rotator cuff. For these reasons, the

Magistrate Judge found that the ALJ's credibility assessment was adequately explained and supported by substantial evidence. (Id. at 22.)

Irey argues that substantial evidence in fact does not support the ALJ's credibility finding. She first claims that it does not follow from Irey's ability to perform household chores that she can work eight-hour days. She then notes the Magistrate Judge's failure to consider aggravating factors such as Irey's testimony that physical therapy made her condition worse. She cites the opinion of Dr. Schaaf that Irey must not lift or carry weight, as well as Irey's testimony regarding measures taken to relieve her own pain. Finally, Irey challenges the Magistrate Judge's reasoning that "post-operatively, plaintiff treated conservatively with outpatient treatment and therapy." (Doc. No. 15 at 22.) According to Irey, [t]his is clearly a lay person's logic," and "[a]n ALJ cannot override treating specialists who provide treatment consisting of therapy and medication." (Doc. No. 16 at 11.)

Despite these arguments, it is not the place of this Court to reweigh the evidence in this case. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Rather, the Court must determine whether substantial evidence supports the ALJ's credibility finding. The ALJ properly explained and supported his decision to only account for Irey's complaints to the extent supported by the medical evidence of record. Therefore, the Court will overrule Irey's fourth Objection.

### E. The Magistrate Judge Properly Concluded that the ALJ Adequately Considered Irey's Obesity in his RFC Assessment

In her final Objection, Irey argues that the Magistrate incorrectly concluded that the ALJ adequately considered the effect of Irey's obesity on her RFC. Irey argues that, given her "gastrointestinal abnormalities, bronchitis and cervical and lumbar impairments, which could be

exacerbated by her additional weight," the ALJ should have given more consideration to Irey's obesity. (Doc. No. 16 at 12.)

> Social Security Regulation 02-1p, Evaluation of Obesity, states:
>
> . . . obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders. . . . However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

Titles II & XVI: Evaluation of Obesity, SSR 02-1P (S.S.A. Sept. 12, 2002).

Here, the ALJ evaluated this case based on the evidence before him—including various medical records related to Irey's obesity—and ultimately determined that Irey could perform light work. Furthermore, as the Magistrate Judge noted, Irey has failed to point to any medical records indicating that Irey's weight exacerbated her other conditions. Irey simply states her weight and body mass index, arguing that her other impairments "*could* be exacerbated by her additional weight." (Doc. No. 16 at 12) (emphasis added). The ALJ's conclusion was supported by substantial evidence, and therefore Irey's final Objection will not be sustained.

## IV. CONCLUSION

Irey's Objections to the Report and Recommendation filed by Chief Magistrate Judge Caracappa will be overruled and the Report and Recommendation will be approved and adopted.

An appropriate Order follows.